# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| VALERIE MARCHAND,<br><br>Plaintiff,<br><br>v.<br><br>NORTHROP GRUMMAN<br>CORPORATION,<br><br>Defendant. | Case No. 16-cv-06825-BLF<br><br>**ORDER GRANTING DEFENDANT'S<br>MOTION TO COMPEL ARBITRATION<br>AND STAY PROCEEDINGS**<br><br>[Re: ECF 14] |

Plaintiff Valerie Marchand brings this action against Defendant Northrop Grumman Corporation ("Northrop"), her former employer, alleging (1) gender discrimination in violation of Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. § 2000e *et seq.*; (2) retaliation in violation of Title VII; (3) age discrimination in violation of the Age Discrimination in Employment Act of 1984 ("ADEA"), 29 U.S.C. § 621 *et seq.*; (4) retaliation in violation of the ADEA; (5) gender discrimination in violation of California's Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code § 12940 *et seq.*; (6) age discrimination in violation of FEHA; (7) retaliation in violation of FEHA; and (8) breach of contract. *See generally* Compl., ECF 1.

Northrop moves to compel arbitration of Marchand's non-Title VII claims on the ground that Marchand agreed to arbitration, and to stay the proceedings. Mot., ECF 14. Marchand opposes the motion. Opp'n, ECF 16. For the foregoing reasons, the Court concludes that there is a valid arbitration agreement wherein Marchand agreed to arbitrate all of her non-Title VII claims arising out of her employment with Northrop, and therefore GRANTS the motion with regard to claims 3 through 8, and STAYS the case pending the outcome of that arbitration.

## I. BACKGROUND

Marchand worked at Northrop from July 2008 to April 5, 2013. Compl. ¶¶ 6, 51.

Marchand began as a Traffic Manager in Santa Clara County, California. *Id.* ¶ 6. After obtaining her Program Manager Certification on Director Jim Suty's advice, Marchand became a Deputy Program Manager (Project Manager IV) in December 2010. *Id.* ¶¶ 7, 8.

In January 2011, Kenneth Howell became Marchand's supervisor. *Id.* ¶ 9. Marchand was the only employee who worked under Howell who was over the age of 50. *Id.* Marchand alleges that Howell falsified and/or misrepresented her 2011 performance reviews. *Id.* ¶¶ 10–13; Marchand Decl. ISO Opp'n ("Marchand Decl.") ¶ 7, ECF 18. She also alleges that because of this, Howell refused to grant her a pay increase despite giving other, younger employees with similar performance ratings a pay increase. Compl. ¶ 14. Marchand further alleges that on January 24, 2012, Director Suty approached her and told her to "find [herself] a new job!" *Id.* ¶ 19. Suty allegedly could not articulate a reason for this pronouncement in violation of Northrop's written and implied policies and procedures. *Id.* ¶¶ 19–20.

On January 25, 2012, Marchand filed a complaint with Human Resources ("HR"), claiming that she was being discriminated against and treated unfairly, and that Howell instructed her to report and record only those hours he had authorized her to work on any given project. *Id.* ¶¶ 21, 23. In response to her allegations of discrimination, Marchand alleges that Joe Pommier, then-Human Resources Manager at Northrop replied, "Whoa, watch how you treat your words!" *Id.* ¶ 21; Pommier Decl. ISO Def.'s Mot. ("Pommier Decl. I"), at ¶ 2. Marchand believes that Pommier was trying to dissuade her from pursuing her complaints. She also relayed her complaints to another person in HR, Abigail Cece, and requested a meeting with Suty and Howell for clarification on her performance. Compl. ¶¶ 21, 24. That same month, Marchand also filed an ethics complaint with Northrop's Ethics Officer, Pat Ryan. *Id.* ¶ 25; Marchand Decl. ¶ 9.

On March 22, 2012, Marchand sent a complaint to Pamela Burrows in HR about discrimination and unfair treatment, including Director Suty's decision to demote her. Compl. ¶ 29; Marchand Decl. ¶ 10. Later that day, Marchand met with Director Suty, Howell, and HR. Compl. ¶ 29. At that meeting, Marchand alleges that Suty handed her a performance criticism letter and informed her that she was being demoted. *Id.* A younger male without the Program Manager Certification filled Marchand's job. *Id.* ¶ 31. On March 28, 2012, Marchand

2

complained about retaliation to HR, which said it would conduct an investigation. *Id.* ¶ 32. On April 25, 2012, Marchand filed her first complaint of discrimination with the Equal Employment Opportunity Commission ("EEOC"). *Id.* ¶ 34. Marchand filed a "Request for an Administrative Officer Review" with Northrop's Ethics Unit on April 30, 2012, raising issues of discrimination, retaliation, and disciplinary action not in compliance with Northrop's procedures. *Id.* ¶ 36; Marchand Decl. ¶ 11 & Ex. 4. In response, Ms. Burrows told Marchand that "several issues" that she raised were "outside of the scope of H103, Dispute Resolution Process," and would not be heard as part of the Administrative Officer Review. Marchand Decl. ¶ 11 & Ex. 5.

On May 8, 2012, Suty placed Marchand on a Performance Improvement Plan ("PIP"). Compl. ¶ 37. Marchand alleges that Suty falsely stated that she volunteered to be placed on the PIP. *Id.* According to the terms of the PIP, if Marchand did not successfully complete her job requirements during her 60-day trial period, she would be terminated. *Id.* The formal PIP was signed on June 5, 2012. *Id.* ¶ 40. Marchand worked for Program Manager Jeffrey Rocha for the remainder of her time at Northrop. *Id.* ¶¶ 40–51.

On December 13, 2012, the Administrative Officer ("AO") for Northrop who had investigated her claims that Marchand's superiors violated Northrop's policies and practices in evaluating her performance, determined that nothing improper had occurred. *Id.* ¶ 47. In February 2013, Marchand met with Pommier and other company "officials" to "appeal" the AO's decision to take no action in response to her complaints. *Id.* ¶ 49; Marchand Decl. ¶ 21. Ultimately, this "group" informed Marchand that they agreed that nothing improper occurred and were going to "uphold" the AO's decision. Compl. ¶ 50. In the letter informing Marchand of the decision, dated March 26, 2013, Karen Campbell, Vice President – Marine Systems, also stated that Marchand's claims of discrimination, defamation, and retaliation were "outside the scope of the review available under Corporate Procedure H103." Marchand Decl. ¶ 22 & Ex. 8, ECF 18; Opp'n 5. That same month, Marchand sent an arbitration demand under Northrop's Arbitration Program to Northrop's Office of General Counsel. Ex. 9 to Marchand Decl., ECF 18. On April 3, 2013, Marchand rescinded her request to use Northrop's arbitration/mediation procedures. Marchand Decl. ¶ 25 & Ex. 10.

Marchand resigned from her position at Northrop on April 5, 2013.  *Id.* ¶ 51.  She filed this

suit on November 28, 2016.  *See generally* Compl.

## II.  EVIDENTIARY OBJECTIONS

### A.  Plaintiff's Objections

Marchand objects to several paragraphs in the declaration of Joe Pommier in support of

Defendant's motion, primarily as lacking foundation, the additional evidence offered by Northrop

in support of its Reply Brief, and all factual contentions offered in Pommier's supplemental

declaration on the grounds that it is improper for a moving party to introduce new evidence in a

reply brief other than those presented in the moving papers.  Pl.'s Obj. to Def.'s Evid. ISO Mot.

("Pl.'s Obj. I"), ECF 19; Pl.'s Obj. to Def.'s Reply Evid. ("Pl.'s Obj. II"), ECF 27.

As to the former, the Court OVERRULES each of Plaintiff's objections, as a proper

foundation has been laid—Mr. Pommier served as a Human Resources Manager from 2005

through 2014, where he was responsible for employee relations, implementation of human

resources programs, and coordinating updates to policies and procedures.  Pommier Decl. I, at ¶ 2.

As to the latter, although it is improper to raise new issues or submit new facts on reply,

*Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996), here, the supplemental Pommier

declaration and the exhibits thereto simply respond to the assertions raised by Plaintiff in her

opposition brief.  *See* Opp'n 8.  Moreover, the Court gave Plaintiff an opportunity to respond to

the evidence, and the Court has considered Plaintiff's supplemental objections and response to this

additional evidence.  *See* Pl.'s Obj. II.  Therefore, the court properly may consider this material.

*See Rodgers v. Fitzgerald*, No. 14-CV-00985-DMR, 2016 WL 4658974, at *8 (N.D. Cal. Sept. 7,

2016).

### B.  Defendant's Objections

Northrop objects to various paragraphs in Plaintiff's declaration as hearsay, lacking

foundation, or improper legal conclusion and/or opinion.  Reply 14–15, ECF 20.  The Court rules

as follows on each Defendant's objections to Marchand's Declaration:

1. Objection to ¶ 2, lines 6–7, OVERRULED, as statement of a party

2. Objection to ¶ 3, lines 15–16, SUSTAINED as to "had I received those documents,

they would have had holes in them," as improper opinion. OVERRULED as to the remainder.

   3.  Objection to ¶ 3, lines 10–11, OVERRULED, as statement of a party.

   4.  Objection to ¶ 4, lines 19–20, OVERRULED, as statement of a party.

   5.  Objection to ¶ 5, lines 25–26, OVERRULED, as statement of a party.

   6.  Objection to ¶ 5, lines 26–27, OVERRULED.

   7.  Objection to ¶ 5, p. 2, lines 2–5, OVERRULED.

   8.  N/A

   9.  Objection to ¶¶ 6–10, OVERRULED.

   10.  Objection to ¶ 12, lines 21–23, SUSTAINED, as improper opinion.

   11.  Objection to ¶¶ 14–17, SUSTAINED, as irrelevant.

   12.  Objection to ¶ 18, lines 15–17, SUSTAINED, as improper legal conclusion.

   13.  Objection to ¶ 21, line 15, OVERRULED, as statement of a party.

   14.  Objection to ¶ 26, lines 16–17, ¶ 27, lines 20–21, SUSTAINED, as irrelevant.

  Northrop also objects to the fact that Plaintiff's objections are in a separate document. *Id.* at 14 n.6. The Court OVERRULES that objection, as the combined documents do not exceed the number of pages allotted to Plaintiff.

## III. LEGAL STANDARD

  The Federal Arbitration Act ("FAA") applies to arbitration agreements affecting interstate commerce. 9 U.S.C. § 2. When it applies, the FAA preempts state laws that conflict with its provisions or obstruct its objective to enforce valid arbitration agreements. *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339, 341–43 (2011).

  Both the FAA and the California Arbitration Act ("CAA") reflect a strong policy in favor of arbitration. *Id.* at 339; *Ericksen, Arbuthnot, McCarthy, Kearney & Walsh, Inc. v. 100 Oak Street*, 35 Cal. 3d 312, 322 (1983). Under the FAA, contractual arbitration agreements must be enforced "save upon such grounds as exist at law or in equity for the revocation of any contract." *Newton v. Am. Debt Servs., Inc.*, 549 Fed. Appx. 692, 693 (9th Cir. 2013) (quoting 9 U.S.C. § 2). Similarly, under the CAA, a court must enforce an arbitration agreement unless the party moving to compel arbitration waived its rights to do so or the agreement to arbitrate is revocable. Cal.

Civ. Proc. Code § 1281.2; *see Ericksen*, 35 Cal. 3d at 322 (explaining that "the term 'agreement'" in the context of section 1281.2 "may properly be construed to refer to the agreement to arbitrate, as distinguished from the overall contract in which that agreement is contained"). "In line with these principles, courts must place arbitration agreements on an equal footing with other contracts, and enforce them according to their terms." *Concepcion*, 563 U.S. at 339 (internal citations omitted); *Weeks v. Crow*, 113 Cal. App. 3d 350, 353 (1980) ("The court should attempt to give effect to the parties' intentions, in light of the usual and ordinary meaning of the contractual language and the circumstances under which the agreement was made." (citation omitted)).

"[W]here a contract contains an arbitration clause," moreover, "courts apply a presumption in favor of arbitrability . . . and the party resisting arbitration bears the burden of establishing that the arbitration agreement is inapplicable." *Wynn Resorts v. Atl.-Pac. Capital, Inc.*, 497 Fed. Appx. 740, 742 (9th Cir. 2012); *Dunlop v. State Farm Mut. Auto. Ins. Co.*, No. C 12-2362, 2012 WL 6096599, at *2 (N.D. Cal. Dec. 7, 2012) ("The party opposing the petition bears the burden of establishing waiver or revocation" under section 1281.2) (citing *St. Agnes Med. Ctr. v. PacifiCare of Cal.*, 31 Cal. 4th 1187, 1195 (2003)).

## IV. DISCUSSION

Northrop contends that Marchand's non-Title VII claims are subject to its Dispute Resolution policies and agreement, which are enforceable under the Federal Arbitration Act ("FAA"), or alternatively, California law. Mot. 1, 8–9. Plaintiff, however, argues that Northrop may not enforce the arbitration clause for several reasons. First, Marchand claims that Northrop waived its right to arbitration through its conduct. Opp'n 5–6, 8–10. Second, Marchand contends that Northrop did not supply Marchand with a copy of its Dispute Resolution Process ("DRP") or Mediation/Arbitration Guide ("Guide") during her onboarding process, and therefore it may not enforce the arbitration agreement because either no contract exists or, if it does exist, the contract was not the subject of mutual acceptance between the parties. *Id.* at 6–7. Third, Plaintiff asserts that Northrop abrogated the application of the DRP to her claims because it twice excluded her claims and because the DRP has expired. *Id.* at 7–8. Finally, Marchand contends that Northrop's DRP is procedurally and substantively unconscionable, and therefore unenforceable. *Id.* at 10–12.

The Court addresses each issue in turn

## A. Enforceability of the Agreement

To resolve whether a dispute is subject to arbitration, the court first determines whether the parties agreed to arbitrate and, if they did, whether the agreement covers the dispute at issue. *Chiron Corp v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 1996). "[A]n agreement to arbitrate is a matter of contract: 'it is a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration.'" *Id.* (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995)). Northrop's records show that Marchand signed a "Dispute Resolution Process Acknowledgment and Agreement" in connection with her hiring in July 2008. Mot. 3; Pommier Decl. I, at ¶ 5 & Ex. A ("DRP Acknowledgement & Agreement" or "Acknowledgement Form"). Marchand does not dispute this fact. Nevertheless, Marchand makes two arguments regarding the enforceability of the agreement. First, Marchand argues that there was no valid agreement to arbitrate between the parties because she was never provided with a copy of Northrop's DRP or Guide during her onboarding process. Opp'n 3; Marchand Decl. ¶ 5. Second, the agreement is not enforceable because (1) nobody told her to read the document prior to signing it; (2) nobody told her she was giving up her right to a jury trial; and (3) it contained "legal words and phrases" that were not explained to her and which she did not understand. Opp'n 10–11; Marchand Decl. ¶¶ 2–3.

The Court finds Plaintiff's arguments unavailing. As Northrop correctly points out, Marchand signed Northrop's "Dispute Resolution Process Acknowledgement and Agreement," on July 14, 2008. Mot. 4; Reply 2; DRP Acknowledgement & Agreement. That form includes the following language:

> BY SIGNING THIS AGREEMENT, I ACKNOWLEDGE THAT I HAVE CAREFULLY READ AND UNDERSTAND BOTH THIS ACKNOWLEDGEMENT AND AGREEMENT AND THE DRP AND THE GUIDE AND THAT I HAVE HAD AN OPPORTUNITY TO ASK QUESTIONS ABOUT THEM. I AGREE THAT ALL DISPUTES INVOLVING A CLAIM COVERED BY THE DRP WILL BE SUBMITTED TO AND DECIDED IN ACCORDANCE WITH THE DRP, WHICH INCLUDES FINAL AND BINDING ARBITRATION. I RECOGNIZE THAT I AM GIVING UP ANY RIGHT TO A JURY TRIAL OR COURT TRIAL FOR ANY COVERED CLAIM THAT

MIGHT ARISE FOLLOWING EMPLOYMENT. I UNDERSTAND THAT I MAY CONSULT AN ATTORNEY PRIOR TO SIGNING THIS ACKNOWLEDGEMENT AND AGREEMENT.

DRP Acknowledgement & Agreement (emphasis in original). Thus, Marchand's signature indicates that she "acknowledge[d] receipt of the DRP and Guide," and that she "agree[d] to be bound by the DRP as a term and condition of [her] employment[.]" *Id.* In her declaration, Marchand states that she did not see the DRP or the Guide appended to the signature page, but does not contest that she signed the acknowledgement. Marchand Decl. ¶ 5. Because Marchand's argument is belied by the fact that she signed the Acknowledgement Form, the Court finds her argument that the agreement is unenforceable because she was not provided with a copy of the DRP or Guide unpersuasive.

Nevertheless, "[u]nder California law, parties may validly incorporate by reference into their contract the terms of another document." *Slaught v. Bencomo Roofing Co.*, 25 Cal. App. 4th 744, 748 (1994) (citation omitted). Northrop has done just that here. "For the terms of another document to be incorporated into the document executed by the parties[, (1)] the reference must be clear and unequivocal, [(2)] the reference must be called to the attention of the other party and he must consent thereto, and [(3)] the terms of the incorporated document must be known or easily available to the contracting parties." *Shaw v. Regents of Univ. of Cal.*, 58 Cal. App. 4th 44, 54 (1997) (citations omitted); *see also Koffler Elec. Mech. Apparatus Repair, Inc. v. Wartsila N.A., Inc.*, No. C–11–0052 EMC, 2011 WL 1086035, at *3 (N.D. Cal. Mar. 24, 2011) (noting and applying *Shaw's* articulation of the legal standard for incorporation by reference under California law).

Here, there is no dispute that the reference to the DRP was clear and unequivocal, that it was drawn to Marchand's attention, or that she received a copy of the DRP. *See* DRP Acknowledgement & Agreement. *See* Opp'n 6; Ex. B to Pommier Decl. I ("Dispute Resolution Process" or "DRP"), ECF 14-1. The dispute, however, is whether the reference to the "Guide" was clear and unequivocal, and whether Marchand received a copy of the "Guide" or whether it was easily available to her. *Id.*

In his declaration in support of Defendant's motion, Joe Pommier, Northrop's Corporate

Employer Relations Advisor, attested that Marchand was provided with a document entitled "Employee Mediation/Binding Arbitration Program," which sets out the processes and requirements for mediation and binding arbitration as referenced in the DRP. Pommier Decl. I, at ¶ 7 & Ex. C ("Employee Mediation/Binding Arbitration Program"), ECF 14-1. Mr. Pommier further declares that this is the "Guide" identified in the Acknowledgement Form. Pommier Decl. I, at ¶ 7. At the hearing, Plaintiff's counsel made much of the fact that the document is not entitled the "Guide," but did not dispute that Marchand received the document or dispute that Mr. Pommier was qualified to make this declaration. Regardless of how the document is titled, it is enough that the Acknowledgement Form directed Marchand to it. *Shaw*, 58 Cal. App. 4th at 54 ("The contract need not recite that it 'incorporates' another document, so long as it 'guide[s] the reader to the incorporated document.'" (citations omitted) (alterations in original)); DRP Acknowledgement & Agreement ("This acknowledgement and Agreement incorporates the DRP and the Mediation/Arbitration Guide (the 'Guide'), a copy of which is also attached to this Acknowledgement and Agreement."). Accordingly, the Court finds Marchand's contention that she did not receive the "Guide" unpersuasive.[1]

Marchand's position that the agreement is not enforceable because (1) nobody told her to read the document prior to signing it; (2) nobody told her she was giving up her right to a jury trial; and (3) it contained "legal words and phrases" that were not explained to her and which she did not understand is equally unpersuasive in light of the aforementioned Acknowledgement Form. A party's failure to read or understand what she was signing does not impact the enforceability of the arbitration agreement. *Madden v. Kaiser Found. Hosps.*, 17 Cal. 3d 699, 710 (1976) ("[O]ne who assents to a contract is bound by its provisions and cannot complain of unfamiliarity with the language of the instrument."). When an employee signs a contract, here, the Arbitration Form, she is conclusively presumed to know its contents and assent to them. *Roldan v. Callahan & Blaine*, 219 Cal. App. 4th 87, 93 (2013) ("[T]he law effectively presumes that

---

[1] Mr. Pommier also declares that these documents were published on the company's intranet for employees to review for the convenience. Pommier Decl. I, at ¶ 12. Marchand does not dispute this point. *See* Marchand Decl. ¶ 12 (stating that the document was on the intranet and that she received it after requesting it). Thus, the Court concludes that it was easily available to her.

everyone who signs a contract has read it thoroughly, whether or not that is true."). Moreover, "in the absence of fraud, overreaching or excusable neglect, [ ] one who signs an instrument may not avoid the impact of its terms on the ground that he failed to read [or understand] the instrument before singing it." *Stewart v. Preston Pipeline Inc.*, 134 Cal. App. 4th 1565, 1588 (2005) (citations and internal quotation marks omitted). Marchand does not contend that her signature was fraudulently obtained, or was the result of overreaching or excusable neglect. Accordingly, her signed acknowledgement is enforceable, and she cannot now rely on arguments that nobody told her to read the document prior to signing it; nobody told her she was giving up her right to a jury trial; or the document contained "legal words and phrases" that were not explained to her and which she did not understand.

Marchand does not contest Northrop's assertion that the agreement covers Marchand's non-Title VII claims. *See* Mot. 7, 9–10; *see generally* Opp'n; *see also* Ex. D to Pommier Decl. I ("Arbitration Program") 2–4, ECF 14-1 (describing the claims covered). As such, the Court finds that the agreement covers Marchand's non-Title VII claims.

## B. Waiver and Abrogation of Right to Arbitration

Marchand next argues that Northrop waived and abrogated its right to enforce the agreement because (1) Northrop did not deliver a timely demand for arbitration; (2) Northrop excluded Marchand's claims on two separate occasions by failing to complete the DRP she requested; and (3) the agreement has expired and is no longer applicable. Opp'n 6–9; Marchand Decl. ¶ 23. Northrop contends that no such waiver or abrogation occurred. Reply 4–5.

"[A] party who resists arbitration on the ground of waiver bears a heavy burden" under the FAA and California law, "and any doubts regarding a waiver allegation should be resolved in favor of arbitration." *St. Agnes*, 31 Cal. 4th at 1195. In *St. Agnes*, the California Supreme court adopted the standard applied to waiver by federal courts, setting forth the following factors courts should consider to determine whether the right to arbitrate has been waived:

> (1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether the litigation machinery has been substantially invoked and the parties were well into preparation of a lawsuit before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to

> the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place; and (6) whether the delay affected, misled, or prejudiced the opposing party.

*Id.* at 1196 (quoting *Sobremonte v. Superior Court*, 61 Cal. App. 4th 980, 992 (1998)) (internal quotations omitted).  In general, the determination of whether a waiver has occurred is a question of fact.  *Id.*  Under the facts here, the Court finds that none of the factors weigh in favor of a finding that Northrop waived its right to arbitrate.

### i.    Northrop Has Not Failed to Timely Demand Arbitration

Marchand contends that Northrop failed to deliver a timely demand for arbitration in accordance with the agreement—*i.e.*, Northrop did not deliver a demand for arbitration to the last address recorded in Marchand's personnel file "within the same time limits which would apply if that claim were brought in court," Employee Mediation/Binding Arbitration Program 5—, and thus it has waived its right to do so.  Opp'n 6.  At the hearing, Plaintiff's counsel clarified that he interpreted the agreement to mean that a demand for arbitration must be filed within the time set for Defendant to file an answer to a complaint.  Northrop disputes this, and argues that Marchand has the obligation to demand arbitration.  Reply 4–5.

The Court finds Marchand's argument on this point unpersuasive because the time for delivering a demand for arbitration has not elapsed.  Assuming without deciding that Plaintiff's counsel's interpretation of the agreement is correct, this argument fails because the time for filing an answer to the Complaint has not elapsed in this case in light of Defendant's filing of the instant motion to compel.  *See* Fed. R. Civ. P. 12(a)(4) (indicating that a party need not serve a responsive pleading until 14 days after the Court acts on as motion under Rule 12(b)); *Armendariz v. Ace Cash Exp.*, No. 13-cv-590, 2013 WL 3791438, at *4 (D. Or. July 19, 2013) ("[T]he Court concludes Defendant's Motion to Compel Arbitration and to Dismiss suffices as a 'responsive pleading' to Plaintiff's Complaint or as an unenumerated motion under Rule 12(b)[.]").  Therefore, even if Northrop had the obligation to demand arbitration, which it contests, it could still timely comply with the requirement within 14 days of the Court's ruling on the instant motion.

### ii.    There Is No Waiver

Second, Plaintiff argues that Northrop, through its conduct, either waived or abrogated its right to compel arbitration. Opp'n 7–10. At the hearing, Plaintiff expanded upon her argument, explaining that she believes there were multiple waivers at multiple points. Plaintiff cited two specific incidents: first, when Northrop "excluded" Marchand's prior claims for arbitration and thereby did not complete the DRP process she requested, and second, when Northrop failed to proceed with the arbitration process after Marchand withdrew her demand for arbitration. The Court finds both of Marchand's arguments unpersuasive.

As to the first, the Court does not agree that Northrop excluded Marchand's claim from arbitration, or that Northrop waived the right to compel arbitration by failing to complete the DRP processes requested. The Court agrees that Marchand made at least two informal attempts to invoke the DRP during her time at the Company. But, the Court does not agree that Northrop told her that claims were not covered by the arbitration agreement. *See* Opp'n 7, 10. A review of the evidence Plaintiff submitted in support of her opposition demonstrates that Northrop told Marchand that her concerns of discrimination, defamation, and retaliation were outside the scope of the *administrative review process* described in the DRP. Ex. 8 to Marchand Decl. This speaks nothing to the applicability of the arbitration process to her claims, and the Arbitration Program says as much: "Note that the claims covered by this Program are not identical to the claims which may be submitted to the internal dispute resolution process through the Informal Review, Administrative Officer Review, and Management Appeals Committee of the Dispute Resolution Process." Employee Mediation/Binding Arbitration Program 4. That same document also states that the Informal Review, Administrative Officer Review, and Management Appeals Committee processes are "encouraged, but not required, and that these internal processes "do[ ] not stop the time running on the filing of a formal Demand for Arbitration." *Id.* at 3. This further supports the Court's conclusion. Moreover, a letter Northrop sent to all employees' homes, along with a copy of the 2010 Arbitration Program, expressly differentiated between the processes. Ex. E to Pommier Decl. I, ECF 14-1 ("Our Dispute Resolution Process has three internal steps (the Informal Process, Administrative Officer Review and the Management Appeals Committee) and two external steps (Mediation and Arbitration)."). Thus, Marchand's informal requests for

Northrop to review her complaints pursuant to the administrative review process do not speak to the application of the arbitration agreement to her claims.

The Court finds Marchand's argument Northrop waived its right to compel arbitration by failing to proceed with the arbitration process after Marchand withdrew her demand for arbitration equally unavailing. Marchand's position stems from her withdrawal and recession of her prior request to invoke arbitration in her dispute with Northrop in April 3, 2013. *See* Ex. 10 to Marchand Decl. ("The company notified [Marchand] that all claims involving discrimination, retaliation, and/or harassment falling under Title VII do not require use of the arbitration / mediation procedure. . . . Since the core of Ms. Marchand's claims fall under Title VII, she hereby withdraws and rescinds her request for use of the company's arbitration / mediation procedures as described under Corporate Procedure H103A."). Marchand's argues, relying on *Brown v. Dillard's Inc.*, 430 F.3d 1004 (9th Cir. 2005), and *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114 (9th Cir. 2008), that despite this withdrawal, Northrop should have insisted on and proceeded with arbitration. Opp'n 9–10. The Court disagrees, and finds Marchand's reliance on *Brown* and *Cox* unavailing.

In *Brown*, the plaintiff, a former employee of the defendant Dillard's Department Store ("Dillard's"), filed a notice of intent to arbitrate a wrongful termination claim pursuant to the defendant's arbitration program. 430 F.3d at 1005. Dillard's refused to participate in the arbitration proceedings—specifically, it failed to pay its portion of the arbitration filing fess—so the plaintiff filed suit in Los Angeles Superior Court. *Id.* at 1005–06, 1008–09. After removing the suit to federal court, Dillard's moved to compel arbitration. *Id.* at 1006. On appeal, the Ninth Circuit held that "when an employer enters into an arbitration agreement with its employees, it must itself participate in properly initiated arbitration proceedings or forego its right to compel arbitration." *Id.*

Unlike the employer in *Brown*, Northrop has done nothing to prevent Marchand from arbitrating her claim. It was Marchand who terminated arbitration. And, there is no evidence that Northrop would not have fully participated had Marchand not terminated the arbitration she initiated. Moreover, Plaintiff mischaracterizes *Brown* by attempting to equate Northrop's failure

13

1    to pursue arbitration, notwithstanding Marchand's withdrawal of her request to arbitrate, with

2    Dillard's active interference with the plaintiff's ability to arbitrate.  In this context, to obligate

3    Northrop to pursue arbitration after Marchand withdrew her demand to arbitrate would be akin to

4    requiring defendants to pursue litigation even after a plaintiff dismisses an action.  This is

5    nonsensical—by withdrawing her request to use the arbitration procedures, there was no pending

6    dispute between the parties.

7        Marchand's reliance on *Cox* is similarly unpersuasive.  In *Cox*, 533 F.3d 1114, plaintiff

8    sent a letter to his employer, demanding arbitration, after being accused of having an inappropriate

9    relationship with one of his female subordinates.  533 F.3d at 1117–18.  The employer responded

10   that arbitration was premature.  *Id.*  After his subsequent termination, plaintiff filed suit and his

11   former employer moved to compel arbitration.  *Id.*  The Ninth Circuit found that plaintiff failed to

12   follow the initiation procedures.  *Id.* at 1122.  As "the non-complying party," the court held that

13   plaintiff was unable to "establish that [his former employer] repudiated the arbitration agreement."

14   *Id.*  In so holding, the court expressly discussed *Brown* and determined that it was distinguishable

15   because the "plaintiff in *Brown* made heroic efforts to initiate arbitration [whereas] Cox did not

16   comply with the terms of the agreement."  *Id.* at 1123.  Unlike in *Cox*, here, Northrop did nothing

17   to indicate that arbitration was not appropriate—as explained above, Northrop's responses to

18   Plaintiff's informal requests to pursue the administrative review process cannot be equated with a

19   repudiation of the arbitration agreement. Nor is there any evidence that Northrop is a "non-

20   complying party."  Regardless, the *Cox* court ruled in favor of the employer, thus undermining

21   Marchand's reliance on it.

22       To further support her claim of waiver, Marchand argues that she has suffered prejudice

23   because she was refused a speedy and efficient resolution of her 2012 issues, had to "slog"

24   through two EEOC investigations spanning four years, and was misled to believe that she could

25   not submit her claims to arbitration.  Opp'n 9–10.  Northrop contends that any purported prejudice

26   is the result of Marchand's own actions.  Reply 8.

27       Sufficient prejudice "typically is found only where the petitioning party's conduct has

28   substantially undermined th[e] important public policy [of favoring arbitration] or substantially

14

impaired the other side's ability to take advantage of the benefits and efficiencies of arbitration." *St. Agnes*, 31 Cal. 4th at 1204. As explained above, Northrop's conduct has not undermined Marchand's ability to pursue arbitration, nor has it impaired Marchand's ability to take advantage of the benefits and efficiencies of arbitration, particularly because it was Marchand who opted to withdraw her formal request for arbitration and proceed with litigation. Accordingly, the Court agrees with Northrop, and finds Marchand's claim of prejudice unpersuasive.

### iii.     The Arbitration Agreement Has Not Expired

Finally, Marchand claims that the arbitration agreement expired as of February 15, 2013, and therefore cannot operate to require her claims be arbitrated. Opp'n 8. Northrop states and provides evidence that the arbitration agreement did not expire because it reauthorized the procedure in January 2013, and again in May 2016. Reply 6; Pommier Decl. ISO Reply ("Pommier Decl. II") ¶¶ 4–7, ECF 20-1; Exs. A & B to Pommier Decl. II, ECF 20-1. Marchand, however, contends that this evidence says nothing about what she agreed to, and therefore, is irrelevant as to her. Pl.'s Obj. II. The Court disagrees. In his declaration, Mr. Pommier indicates that on January 25, 2013, Northrop reauthorized the Employee Mediation/Binding Arbitration Program dated February 15, 2010, making only minor revisions. Pommier Decl. II, at ¶ 5 & Ex. A. Mr. Pommier further avers that Northrop communicated this reauthorization and the minor revisions to employees by posting the updated version on Northrop's Intranet, which is available to all employees including Marchand. Pommier Decl. II, at ¶ 6. Accordingly, at the time Marchand left Northrop, the obligation to arbitrate persisted, and Marchand cannot now argue that it does not apply as to her.

### C.     Unconscionability of the Agreement

As an employment arbitration policy, the agreement is subject to the Federal Arbitration Act. *Circuit City Stores v. Adams*, 532 U.S. 105 (2001). Federal policy encourages arbitration, prohibiting state courts from treating arbitration agreements differently than any other contractual agreement. *Concepcion*, 563 U.S. at 341–42; *Gilmer v. Inter-state/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991). Under the FAA, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any

15

contract." 9 U.S.C. § 2 (2012).  As a result, courts cannot nullify arbitration agreements based either on state law that applies only to arbitration agreements or a general public policy against arbitration.  *Concepcion*, 563 U.S. at 341–42.  The court must apply a contractual defense, like unconscionability, in the same way it would to any contract dispute.  *Id.* at 342–43.  Accordingly, review of the agreement must be in the context of the FAA's mandate to encourage arbitration coupled with consideration of Marchand's unconscionability claim under California contract law. *Id.* at 338; *Ackerberg v. Citicorp USA, Inc.*, 898 F. Supp. 2d 1172, 1175 (N.D. Cal. 2012).

Under California law, a contractual clause is unenforceable only if it is both procedurally and substantively unconscionable.  *See Armendariz v. Found Health Psychcare Servs., Inc.*, 24 Cal. 4th 83 (2000), *abrogated on other grounds by Concepcion*, 563 U.S. 533; *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1280 (9th Cir. 2006).  "The more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa."  *Armendariz,* 24 Cal. 4th at 114.  Still, "both [must] be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability."  *Id.*

### iv.  Procedural Unconscionability

Procedural unconscionability arises from circumstances surrounding the formation and negotiation of a contract.  *Armendariz*, 24 Cal. 4th at 113.  It focuses on two elements: oppression and surprise.  *Id*.  "Oppression" occurs where one party has little or no ability to negotiate the terms of the contract, resulting in an unequal bargaining position and lack of meaningful choice. *Id.*  "Surprise" looks to the extent to which the terms of the contract were hidden by the party in the stronger bargaining position.  *Id.*  Marchand argues that the agreement is procedurally unconscionable for four reasons: (1) the arbitration agreement was required as a condition of employment; (2) employees were not allowed to review the policy before its implementation; (3) continuation of employment required acquiescence to the DRP; and (4) Northrop failed to provide her with a copy of the Employee Mediation/Binding Arbitration Program.  Opp'n 10–11.

The Court has already addressed (2) and (4) above, and will not rehash the issues here.  *See supra*, at pp. 7–9 (Marchand signed the acknowledgement form, which included an attestation that

she read and understood the agreement and its terms), 8–9 (finding that Marchand received a copy of the Employee Mediation/ Binding Arbitration Program and/or it was easily accessible to her). Regarding (1) and (3), Plaintiff's argument is essentially that the arbitration agreement was a contract of adhesion—*i.e.*, "a standardized contract that is imposed and drafted by the party of superior bargaining strength and relegates to the other party only the opportunity to adhere to the contract or reject it." *Higgins v. Superior Court*, 140 Cal. App. 4th 1238, 1248 (2006) (citations and internal quotation marks omitted). In response to this argument, Northrop contends that even if the arbitration provision is a contract of adhesion or the result of unequal bargaining power, it is still enforceable. Reply 9–10 (citing *Lagatree v. Luce, Forward, Hamilton & Scripps*, 74 Cal. App. 4th 1105, 1122–23 (1999)).

The Court agrees that the agreement does appear to be a contract of adhesion. *See Dalton v. J. Mann Inc.*, No. 16-CV-03409, 2016 WL 5909710, at *3 (N.D. Cal. Oct. 11, 2016). There was no right to opt out of arbitration. The adhesive nature of the employment contract does support oppressiveness and is enough to satisfy the procedural unconscionability requirement. However, as Northrop suggests, "'[w]here there is no other indication of oppression or surprise, the degree of procedural unconscionability of an adhesion agreement is low, and the agreement will be enforceable unless the degree of substantive unconscionability is high.'" *Colvin v. NASDAQ OMX Grp., Inc.*, No. 15-cv-02078, 2015 WL 6735292, at *4 (N.D. Cal. Nov. 4, 2015) (quoting *Ajamian v. CantorCO2e, L.P.*, 203 Cal. App. 4th 771, 796 (2012)); *see also Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1004 (9th Cir. 2010) (stating that "California law treats contracts of adhesion, or at least terms over which a party of lesser bargaining power had no opportunity to negotiate, as procedurally unconscionable to at least some degree"); *Mikhak v. Univ. of Phx.*, No. C16-00901, 2016 WL 3401763, at *9 (N.D. Cal. June 21, 2016) (stating that "[t]he arbitration clause here is at least somewhat procedurally unconscionable due to its oppressive nature"; adding that, [b]ased on the slightly oppressive nature of the adhesive agreement, the Court finds a minimal amount of procedural unconscionability").

The requirement of surprise, however, is not satisfied. Despite Marchand's statement that she did not review or understand what she was signing, she received the agreement, whether or not

17

she understood it. Furthermore, the arbitration agreement is neither "hidden in a prolix printed form," *Bruni v. Didion*, 160 Cal. App. 4th 160 Cal. App. 4th 1272, 1288 (2008), nor drafted in "fine-print terms," *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 911 (2015). The Acknowledgement Form is a short, one-page document, and the arbitration clause is printed in 12-point, all-caps type. *See* Acknowledgement Form. Moreover, Marchand signed the Acknowledgement Form in the space provided, indicating that she understood the form and "agree[ed] that all disputes involving a claim covered by the DRP will be submitted to and decided in accordance with the DRP, which includes final and binding arbitration." *Id.* Finally, even if Marchand did not read the arbitration agreement or the documents attached thereto, that does not make it procedurally unconscionable. "When a person with the capacity of reading and understanding an instrument signs it, he may not, in the absence of fraud, coercion or excusable neglect, avoid its terms on the ground he failed to read it before signing it." *Bolanos v. Khalatian*, 231 Cal. App. 3d 1586, 1590 (Ct. App. 1991).

For the aforementioned reasons, the Court finds at most modest procedural unconscionability.

### v. Substantive Unconscionability

Although Plaintiff has demonstrated some level or degree of procedural unconscionability, she must also demonstrate substantive unconscionability to avoid arbitration—"both [must] be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability." *Armendariz*, 24 Cal.4th 83, 114 (2000). Because Plaintiff has failed to demonstrate substantive unconscionability, the Court concludes that the arbitration agreement is not unconscionable under California law.

An arbitration provision is substantively unconscionable if it is "overly harsh" or generates "one-sided results," typically looking to "whether contractual provisions reallocate risks in an objectively unreasonable or unexpected manner." *Serpa v. Cal. Sur. Investigations, Inc.*, 215 Cal. App. 4th 695, 703 (2013) (quoting *Armendariz,* 24 Cal. 4th at 114). "[T]he paramount consideration in assessing conscionability is mutuality." *Abramson v. Juniper Networks, Inc.*, 115 Cal. App. 4th 638, 657 (2004). California law requires an arbitration agreement to have a

1    "modicum of bilaterality"—focusing on whether a provision is so one-sided as to shock the

2    conscience. *Armendariz*, 24 Cal. 4th at 117; *see also Nyulassy v. Lockheed Martin Corp.*, 120 Cal.

3    App. 4th 1267, 1281 (2004).

4          Marchand asserts that the agreement is substantively unconscionable for five reasons: (1)

5    the arbitrator may, but is not required to, award fees to Plaintiff if she is the prevailing party; (2)

6    the Agreement includes "legalese"; (3) the Employee Mediation/Binding Arbitration Program

7    refers to the "then-current" arbitration rules of the AAA or JAMS; (4) the DRP allows only three

8    depositions unless a special motion is filed; and (5) the Employee Mediation/Binding Arbitration

9    Program waives class claims. Opp'n 11–12. Northrop disputes each of Marchand's contentions,

10   Reply 11–13, which the Court addresses in turn.

### a. Limitation of Fee and Cost Awards

12         Marchand first argues that the arbitrator is not required to award attorneys' fees and/or

13   costs despite the fact that such an award is mandated under Title VII[2], the ADEA, and FEHA.

14   Opp'n 11. Northrop disagrees with Marchand's interpretation of the agreement. With respect to

15   this issue, the Arbitration Program provides: "If, however, any party prevails on a claim, which (if

16   brought in court) affords the prevailing party attorneys' fees and/or costs, then the arbitrator may

17   award reasonable fees and/or costs to the prevailing party to the same extent as would apply in

18   court." Employee Mediation/Binding Arbitration Program 8. In light of California law, which

19   requires the Court to interpret an arbitration agreement, if at all possible, in a way that supports

20   enforcement of the agreement, *see Pearson Dental Supplies v. Superior Court*, 48 Cal. 4th 665,

21   681–82 (2010), the Court finds that this language does not give the arbitrator the *discretion* to

22   award fees and costs where mandated by law as Plaintiff contends; rather, it gives the arbitrator

23   the *authority* to award such fees and costs in accordance with law. Indeed, this is how the nearly

24   identical language in FEHA has been interpreted. *See* Cal. Gov't Code § 12965(b) (a court "in its

25   discretion, may award to the prevailing party reasonable attorney's fees and costs"); *see Flannery*

26   *v. Prentice,* 26 Cal. 4th 572, 582–83 & n.12 (2001) ("[I]f § 12965 awards were doubtful in

27

28   _____

     [2] Title VII claims are expressly excluded from arbitration.

1  California courts, this would effectively defeat the policy of keeping the California law as an

2  effective remedy against [ ] discrimination"). Thus, the Court does not find this language weighs

3  in favor of a finding of substantive unconscionability.

### b. Inclusion of "Legalese"

5  Second, Marchand argues that the use of "legalese" in the DRP renders the agreement

6  substantive unconscionable. Opp'n 11. As an initial matter, this issue more properly speaks to

7  procedural unconscionability. *See, e.g.*, *Samaniego v. Empire Today, LLC*, 205 Cal. App. 4th

8  1138, 1146 (2012). And, the Court has already found that Plaintiff's claimed inability to

9  comprehend the terms and language in the arbitration agreement does not void the agreement. *See*

10  *supra*, at 9–10. Nevertheless, the cases upon which Plaintiff relies are distinguishable and

11  demonstrate why the language in the agreement is not unconscionable. First, in *Samaniego*, the

12  court found procedural unconscionability where the workers performed manual labor, did not

13  speak English as a first language, had limited or no literacy in English, and were told the

14  agreement was only available in English, among other factors suggesting procedural

15  unconscionability. 205 Cal. App. 4th at 1145–46. Here, by contrast, Marchand is well educated

16  and there is no indication that she does not understand the English language.

17  Second, in *Bruni v. Didion*, the court found that an arbitration agreement using "legalese"

18  was unconscionable because the plaintiffs established that they were unable to understand the one-

19  sided provisions contained within the agreement. 160 Cal. App. 4th at 1282, 1290–91. The court

20  cited the general rule "that one who signs an instrument may not avoid the impact of its terms on

21  the ground that he failed to read the instrument before signing it," but noted that such a rule

22  applies "only in the absence of 'overreaching.'" *Id.* at 1291 (citations omitted). The overreaching

23  at issue in *Bruni* was the fact that the arbitration agreement at issue empowered the arbitrator to

24  determine arbitrability. *Id.* at 1290. As the Court discusses below, the Court finds no evidence of

25  similar "overreaching" in the agreement at issue here.

### c. Controlling Rules for Arbitration

27  Third, Plaintiff's contention that the arbitration agreement failed to "designate what rules

28  would exist for arbitration" is similarly unfounded. Opp'n 12. As Northrop correctly contends,

20

the adoption of the Rules of the American Arbitration Association ("AAA") and/or JAMS, as is incorporated into the instant agreement, is sufficient to dispel any argument that the agreement is procedurally unconscionable. *See* Mot. 13.

The Arbitration Program states, in relevant part:

> The party who did not initiate the arbitration can choose between either the JAMS or AAA . . . to administer the arbitration. . . .
>
> Except to the extent that they are inconsistent with those procedures which are required by law as a prerequisite to a valid and enforceable agreement to arbitrate claims in the jurisdiction where the arbitration is held and (if applicable) the jurisdiction where the parties' obligation to arbitrate claims under this Program is enforced, or are inconsistent with the express procedures set forth in this Program, *the arbitrator will apply the Tribunal's then-current Arbitration Rules and Procedures for Employment Disputes, or equivalent*. In other words, the arbitrator will first apply any legally required rules, which supersede all other rules if there is an inconsistency; the arbitrator will next apply the specific provisions set forth in this Program, which supersede the Tribunal's Rules if there is an inconsistency; and finally the arbitrator will apply the Tribunal's Rules. Copies of the rules of the Tribunals may be obtained through the employee's site Human Resources manager or at the websites of the AAA (www.adr.org) and/or JAMS (www.jamsadr.com).

Employee Mediation/Binding Arbitration Program 7 (emphasis added). Plaintiff takes issues with the emphasized portions of this excerpt. *See* Opp'n 12. She argues that the phrase "then-current" is ambiguous, and therefore unconscionable. *Id.* However, like other courts before it, this Court finds this language sufficient to "incorporate[ ] the applicable rules of the AAA into the terms of the contract." *Cox*, 533 F.3d at 1122 (discussing identical language). Accordingly, the Court finds this provision unambiguous, and thus, it is not an indication of substantive unconscionability.

### d. Limitations on Discovery

The Arbitration Program states: "The arbitrator will have authority to decide any disputes regarding discovery. If any party seeks to notice more than three depositions in connection with a claim, the parties shall first hold a joint meeting with the arbitrator to discuss discovery issues, limitations, and scheduling." Employee Mediation/Binding Arbitration Program 9. Plaintiff argues that this language improperly limits discovery in contravention of the California Supreme Court's ruling in *Armendariz.* Opp'n 12. Northrop disagrees with Marchand's contention, and

asserts that this is a permissible limitation. Reply 12 (citing *Poublon v. C.H. Robinson Co.*, 846

F.3d 1251, 1270 (9th Cir. 2017)).

In *Poublon*, the Ninth Circuit rejected the plaintiff's argument that limitations on discovery were substantively unconscionable where they provide for less discovery than the federal rules. 846 F.3d at 1270. This is in line with prior decisions of the California Supreme Court, where the court made clear that "limitation on discovery is one important component of the 'simplicity, informality, and expedition of arbitration.'" *Armendariz*, 24 Cal. 4th at 106 n.11 (citation omitted). Accordingly, because "arbitration is meant to be a streamlined procedure," parties may agree to limit the number of depositions and impose other restrictions. *Dotson v. Amgem, Inc.*, 181 Cal. App. 4th 975, 984 (2010). "But while limitations on discovery are permissible in an arbitration agreement, California has made clear that a court must balance the 'desirable simplicity' of limiting discovery with employees' need for discovery 'sufficient to adequately arbitrate their statutory claim, including access to essential documents and witnesses, as determined by the arbitrator(s) and subject to limited judicial review.'" *Poublon*, 846 F.3d at 1270 (citing and quoting *Armendariz*, 24 Cal. 4th at 106). In finding this balance, California courts look to the amount of discovery permitted, the standard for obtaining additional discovery, and the evidence presented by plaintiffs that the discovery limitations will prevent them from adequately arbitrating their statutory claims. *Fitz v. NCR Corp.*, 118 Cal.App.4th 702, 715–18.

The Court need not conduct this balancing here because the agreement at issue does not appear to limit the number of depositions a party may take. Instead, as the excerpted language indicates, any party seeking more than three depositions must "first hold a joint meeting with the arbitrator to discuss discovery issues, limitations, and scheduling." Mediation/Arbitration Program 9. And, "there is no reason to believe [that] an arbitrator [under the AAA and/or JAMS Rules] will act unreasonably or unlawfully related to [Plaintiff's] discovery efforts." *Jackson v. Tic--The Indus. Co.*, No. 1:13-CV-02088, 2014 WL 1232215, at *10 (E.D. Cal. Mar. 24, 2014). Accordingly, the Court does not conclude that the purported limitation on discovery creates unconscionability.

### e. Waiver of Class Claims

Finally, Plaintiff's contention that the agreement is substantively unconscionable because it includes a class action waiver is similarly unavailing—Marchand is not alleging any class claims, and the agreement only provides for waiver of class claims "[t]o the extent it is permissible to do so in the jurisdiction where arbitration is held." *See* Opp'n 12; Employee Mediation/Binding Arbitration Program 10. Perhaps recognizing this, Plaintiff herself states that this argument is "an aside." *Id.* Therefore, the Court does not conclude that this provision makes the agreement substantive unconscionable.

### f. Conclusion

In order for the Court to void the arbitration agreement as unconscionable, both procedural and substantive unconscionability must be satisfied. While the arbitration agreement here is mildly procedurally unconscionable, it is not substantively unconscionable, and it is therefore valid and enforceable.

## V. ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that Northrop's motion to compel arbitration of Marchand's non-Title VII claims—*i.e.*, claims 3 through 8, and stay Marchand's remaining claims is GRANTED. *See* 9 U.S.C. § 3; Cal. Civ. Proc. Code § 1281.4. Within seven days of the resolution of the arbitration, the parties shall file a joint status report advising the Court of the resolution of the matter and any further action required by the Court.

**IT IS SO ORDERED.**

Dated: June 19, 2017

BETH LABSON FREEMAN
United States District Judge